**SO ORDERED.**

**SIGNED this 7 day of June, 2016.**

_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| JAMES CROSS POWERS | 14-06943-5-SWH |
| DEBTOR | |

### AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEBTOR'S MOTIONS TO AVOID JUDICIAL LIENS

The matters before the court are the debtor's motions to avoid the judicial liens held by Farrar Sod Farm Inc. ("Farrar"), Evergreen Seed LLC ("Evergreen"), and John Deere Landscapes LLC ("John Deere") pursuant to 11 U.S.C. § 522(f)(1) and Rules 4003(d) and 9014 of the Federal Rules of Bankruptcy Procedure. A hearing was held on February 24, 2016, in Raleigh, North Carolina. For the reasons set forth below, the motion to avoid the judicial lien of Farrar is granted in part and denied in part, and the motions to avoid the judicial liens of Evergreen and John Deere are denied.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

**BACKGROUND**

The facts are undisputed. The debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on December 1, 2014. The debtor and his ex-wife, Roxanne C. Powers, own property located at 1909 Morrisville Carpenter Road in Cary, North Carolina (the "Property") as tenants in common. The debtor claimed a homestead exemption in the Property in the amount of $35,000.00 pursuant to N.C. Gen. Stat. § 1C-1601(a)(1). The Property has a fair market value of $292,000.00, and the debtor's one-half interest therein is valued at $146,000.00. The Property is subject to a first position deed of trust held by Bank of America, N.A., which had an outstanding balance of $180,978.92 on the petition date ("mortgage lien"). In addition to the mortgage lien, the Property is encumbered by the following three[1] judicial liens docketed in the Office of the Clerk of Court of Wake County against the debtor's undivided one-half interest in the property, listed in order of priority, beginning with the most senior: John Deere, in the amount of $14,952.50; Evergreen, in the amount of $4,617.48; and Farrar, in the amount of $29,346.44. The debtor seeks to avoid these three liens in their entirety.

**DISCUSSION**

Section 522(b) of the Bankruptcy Code permits individual debtors to exempt qualifying property from the bankruptcy estate. § 522(b). To the extent that a judicial lien impairs an exemption to which the debtor would have been entitled under § 522(b), § 522(f)(1)(A) permits the debtor to avoid it. § 522(f)(1)(A). North Carolina has opted out of the federal exemptions provided under § 522(d). N.C. Gen. Stat. § 1C-1601(f). The applicable exemptions in this state are therefore those provided by North Carolina law. N.C. Gen. Stat. § 1C-1601(f). Under North Carolina law, a debtor may claim an exemption in real property used as a principal residence in an amount up to $35,000.00. N.C. Gen. Stat. § 1C-1601(a)(1). The practical effect of the exemption is the same

---

[1] Previous orders were entered allowing the avoidance of judicial liens held by Anderson Jones, PLLC, Aspen Investments, Inc., and Bullhead Investments, LLC. These liens were avoidable under any interpretation of the statute.

2

under both federal and state law: the debtor is not liable for debt impairing such exemption. § 522(c) ("Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . ."); N.C. Gen. Stat. § 1C-1604 ("Property allocated to the debtor as exempt is free of the enforcement of the claims of creditors for indebtedness incurred before or after the exempt property is set aside . . .").

In an attempt to aid courts in calculating impairment, Congress, in the Bankruptcy Reform Act of 1994, adopted an arithmetic test to determine whether a lien impairs an exemption. See H.R. REP. 103–835, 52, 1994 U.S.C.C.A.N. 3340, 3361. Section 522(f)(2)(A) sets forth the following methodology for determining the extent to which a judicial lien impairs an exemption:

> [A] lien shall be considered to impair an exemption to the extent that the sum of –
>> (i) the lien;
>> (ii) all other liens on the property; and
>> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

§ 522(f)(2)(A). The enactment of the statutory formula, however, did not resolve impairment calculation in circumstances where a judgment lien attaches to the undivided interest of a single owner of jointly owned property. See All Points Capital Corp. v. Meyer (In re Meyer), 373 B.R. 84, 86 (B.A.P. 9th Cir. 2007). A minority of courts apply the formula literally, which has the "advantage of conforming to the letter of § 522(f)(2)(A)(iii)," but often avoids more liens than necessary to ensure the debtor retains the maximum available exemption. Id. at 89-90. Most courts, however, refashion the formula in some manner to adjust for the proportional differences presented by jointly owned property. See Nelson v. Scala, 192 F.3d 32, 35‑36 (1st Cir. 1999).

The majority of courts to reject the strict interpretation, including the U.S. Court of Appeals for the First, Third, Ninth and Eleventh Circuits, reason that such a strict approach is at odds with the statutory purpose of § 522. Meyer, 373 B.R. at 89-90; Miller v. Sul (In re Miller), 299 F.3d 183, 186 (3d Cir. 2002); Lehman v. VisionSpan, Inc. (In re Lehman), 205 F.2d 1255, 1257 (11th Cir.

2000); Nelson, 192 F.3d at 35-36. Courts following this line of reasoning have declined to apply the formula literally because although the formula's aim is to protect the debtor's exemption, literal application in a situation where the exempt property is co-owned by a non-debtor actually creates equity in excess of the exemption amount. See Nelson, 192 F.3d at 34–35. This is because in determining whether a lien impairs an exemption, the literal formula compares the total amount of liens on the property to the debtor's interest in the property absent any liens. See 11 U.S.C. § 522(f)(2)(A). Therefore, in the case of individually owned property, the debtor's interest equals the *full value* of the property, but in the case of jointly owned property, the debtor's interest is only a *partial interest*. § 522(f)(2)(A). Accordingly, the applicable point of comparison is lower when the property has a non-debtor co-owner, and results in higher impairment because the liens on the property exceed the debtor's interest by a greater amount. The formula's production of "an unreasonably high impairment . . . has the effect of creating additional equity for the debtor at the expense of the lienholder whose lien is thereby avoided." Kolich v. Antioch Laurel Veterinary Hosp. (In re Kolich), 328 F.3d 406, 409 (8th Cir. 2003). The creation of additional equity can result in the avoidance of more liens than are necessary to assure the debtor the maximum available exemption. See Meyer, 373 B.R. at 89–90. The effect of this is to "extend the protection Congress sought to provide debtors and distort priorities between creditors." In re Ware, 274 B.R. 206, 209 (Bankr. D.S.C. 2001).

A minority of courts have adopted a strict construction of the language of § 522(f)(2)(A) and apply the formula literally. See, e.g., Zeigler Eng'g Sales, Inc. v. Cozad (In re Cozad), 208 B.R. 495 (B.A.P. 10th Cir. 1997); In re White, 337 B.R. 686 (Bankr. N.D. Cal. 2005). The minority view relies on the plain meaning of the statute, referring to the Supreme Court's "strong mandate" that courts are not to rewrite otherwise plain legislation. White, 337 B.R. at 690 ("Where a statute is subject to a plain meaning, the court need not engage in the imprecise exercise of rewriting rules that Congress has affirmatively enacted.") (citing Lamie v. United States Trustee, 540 U.S. 526, 538

(2004)).

The courts in the majority that decline to apply the statutory formula literally in cases involving jointly owned property generally adjust their applications in one of two ways. In calculating "all other liens on the property" under subsection (ii) of § 522(f)(2)(A), the first method, which the court dubs the "proration approach," substitutes the mortgage or mortgages attributable to the debtor's share of the property in place of the total debt secured by the mortgage or mortgages. See Miller, 299 F.3d at 186–87. This substitution establishes symmetry between the obligations and property interests in the formula and avoids a windfall to the debtor at the expense of secured creditors. In re Jeffries, No. 01-10721C-7G, 2002 WL 202108, at *2 (Bankr. M.D.N.C. Jan. 31, 2002). In a joint ownership situation, the obligations of the debtor and non-debtor co-owner are asymmetrical because *both* the consensual mortgage lien and the judicial liens have attached to the debtor's partial interest, yet *only* the consensual mortgage lien has attached to the non-debtor co-owner's partial interest. Nelson, 192 F.3d at 36. This adjustment prevents the formula from simultaneously utilizing the full mortgage lien encumbering the entire property and the disproportionate value of the debtor's partial interest. See Jeffries, 2002 WL 202108, at *2.

The second method, referred to as the "common sense approach," Lehman, 205 F.2d at 1257, the "debtor's equity approach," Ware, 274 B.R. at 209, or the "three-step approach," involves a simpler calculation and produces the same outcome as the substitution method just described, but deviates more significantly from the statutory formula's order of calculations. Under this approach, courts begin by deducting the full amount of the mortgage from the full value of the property to calculate the total equity in the property absent any judicial liens. See Lehman, 205 F.3d at 1257 (explaining the "common sense approach"). This amount is divided in half to arrive at the value of the debtor's half interest. Id. The exemption is then subtracted from the debtor's half interest to yield the non-exempt portion of debtor's remaining equity in the property. Id. The judicial lien creditor retains its lien in this amount. Id. Instead of calculating the amount of impairment (or amount of

liens that are avoidable), the common sense approach calculates the amount of liens that are *not* avoidable.

Under both of the non-literal approaches, multiple liens must be avoided in order of reverse priority. In other words, the most senior lien is avoided last, and the most junior lien is avoided first. To achieve this result using the proration approach, liens are subtracted in order of reverse priority. "Applications [sic] of the formula in § 522(f)(2)(A) requires that the liens be subtracted in order of reverse priority and that those that are avoided not be included in [the next round of] calculations." In re Brown, 436 B.R. 822, 824 (Bankr. W.D. Va. 2010) (quoting In re White, 337 B.R. 686, 691 (Bankr. N.D. Cal. 2005)). Applying the reverse priority rule to the common sense approach requires a different process. Because the common sense approach calculates the amount of liens that are *unavoidable*, one must subtract liens from the amount unavoidable beginning with the most senior until the unprotected equity is diminished. Table I, below, demonstrates this concept.

TABLE I
Literal Application (Farrar lien)

| | |
|---|---:|
| "the lien" | $29,346.44 (Farrar) |
| "all other liens on the property" | $180,978.92 (mortgage lien) |
| | $14,952.50 (John Deere) |
| | $4,617.48 (Evergreen) |
| "the amount of the exemption that the debtor could claim if there were no liens on the property" | $35,000.00 |
| TOTAL | $264,895.34 |
| "value that the debtor's interest in the property would have in the absence of any liens" (property's fair market value divided by 2) | $146,000.00 |
| Amount of impairment (amount avoidable) | $118,895.34 |

Proration Method (Farrar lien)

| | |
|---|---|
| "the lien" | $29,346.44 (Farrar) |
| "all other liens on the property" | $90,489.46 (debtor's share of mortgage) |
| | $14,952.50 (John Deere) |
| | $4,617.48 (Evergreen) |
| "the amount of the exemption that the debtor could claim if there were no liens on the property" | $35,000.00 |
| TOTAL | $174,405.88 |
| "value that the debtor's interest in the property would have in the absence of any liens" (property's fair market value divided by 2) | $146,000.00 |
| Amount of impairment (amount avoidable) | $28,405.88 |

Common Sense Method

| | |
|---|---|
| Property's total fair market value | $292,000.00 |
| Mortgage lien | - $180,978.92 |
| Total equity in property absent any judicial liens | = $111,021.08 |
| Debtor's equity in property absent any judicial liens (total equity/2) | $55,510.54 |
| Exemption | - $35,000.00 |
| Debtor's remaining non-exempt equity (amount unavoidable) | $20,510.54 |

Effect upon Liens – Adjusted Methods

| | |
|---|---|
| Farrar (partially unavoidable) | $940.56 unavoidable |
| | $28,405.88 avoidable |
| Evergreen (fully unavoidable) | $4,617.48 |
| John Deere (fully unavoidable) | $14,952.50 |

This court considered the literal and proration approaches in Raleigh Plumbing & Heating, Inc. v. Lamanna (In re Lamanna), Adv. Pro. No. H-11–00134–8-SWH, 2012 WL 909652, at *5 (Bankr. E.D.N.C. Mar. 15, 2012), but declined to adopt a method because the lien avoidance

outcome was the same under either approach.  Lamanna, 2012 WL 909652, at *5.  As demonstrated above, in the present case, the literal and adjusted applications produce drastically different results.  The literal application of the formula with respect to the most junior lien of Farrar results in an impairment of $118,895.34, thereby allowing the debtor to avoid all three liens.  Under both the common sense approach and the proration method, the impairment is $28,405.88.  This impairment amount allows the debtor to partially avoid the Farrar lien in the amount of $28,405.88.  However, the Evergreen and John Deere liens are unavoidable.

This court has considered both methods and concludes that adjusting the formula using either the common sense approach or the proration approach is most appropriate in situations involving jointly owned property encumbered by multiple judicial liens.  The court agrees with the courts in the majority that "mechanical application of the statutory formula . . . lead[s] to an absurd result not intended by Congress."  Meyer, 373 B.R. at 90; see also Miller, 299 F.3d at 186 (literal approach produces illogical result that Congress could not have intended); Lehman, 205 F.3d at 1257-58 (clear evidence that literal interpretation disserves legislative intent and produces absurd result); Jeffries, 2002 WL 202108, at *2.  "Courts are not required to follow literal language where it would produce an outcome at odds with the purpose of Congress and where the result stems merely from an unintended quirk in drafting."  Nelson, 192 F.3d at 35.  The court finds the instant circumstances to be an occasion which justifies looking beyond the plain language of the statute, as a literal application would produce "an absurd result or a result obviously not intended by Congress."  Jeffries, 2002 WL 202108, at *2.  Further, unlike the result produced by a literal application of the formula, the result produced by an adjusted application: (1) conforms to the statute's express language permitting a debtor to avoid a lien only "*to the extent* that such lien impairs an exemption," § 522(f)(1) (emphasis added), and (2) resembles the outcome in an involuntary judicial sale under state law.

Section 522(f)(1) provides that a debtor may avoid the fixing of a lien *to the extent* that the

lien impairs an exemption. § 522(f)(1). "Thus, only that part of a lien which actually interferes with the debtor's homestead exemption may be avoided." Wachovia Bank & Trust Co., N.A. v. Opperman (In re Opperman), 943 F.2d 441, 444 (4th Cir. 1991). This issue has been described as "how to protect a debtor's exemption, and no more, in the all-too-common joint ownership single debtor situation." See Meyer, 373 B.R. at 95 (Montali, J., concurring and dissenting). In the present case, allowing the debtor to avoid $20,510.54 worth of liens that do not impair any exemption would directly contradict the language of the statute and consistent interpretations of that language. See, e.g., In re Barrett, 370 B.R. 1, 3 (Bankr. D. Me. 2007) ("To the extent that a judicial lien does not impair a debtor's exemption, it cannot be avoided."). A literal application of the formula directs the avoidance of all three liens at issue – including those that simply do not impair the debtor's $35,000.00 exemption.

Additionally, involuntary judicial sales under North Carolina law provide an instructive basis for analysis. See Katz v. Pike (In re Pike), 243 B.R. 66, 70 (B.A.P. 9th Cir. 1999) ("the filing of a bankruptcy petition is the functional equivalent of a forced or involuntary sale under [state] law"). Therefore, in considering how to apply the impairment formula, the judicial lien exemption impairment in bankruptcy is analogous to judicial lien exemption impairment in an involuntary judicial sale under state law. See 11 U.S.C. § 522(f); N.C. Gen. Stat. § 1-362.

In the present case, the literal application of the § 522(f)(2)(A) formula produces a $20,510.54 windfall to the debtor that he would not otherwise receive in an involuntary judicial sale outside of bankruptcy. North Carolina law does not provide an impairment calculation formula for execution sales that would provide such a windfall to debtors co-owning property jointly with non-debtors. An adjusted, rather than a literal, application of the § 522(f)(2)(A) formula more accurately reflects the calculation of judicial lien exemption impairment in the context of an involuntary judicial sale under state law where the full amount of a consensual lien is included in the calculation to determine equity.

## CONCLUSION

In chapter 13 cases, judicial liens may be avoided under § 522(f) only upon confirmation. <u>In re Allred</u>, 45 B.R. 676, 678 (Bankr. E.D.N.C. 1985). Accordingly, and based upon the foregoing, it is ordered that, upon confirmation, the judicial lien of Farrar be partially avoided in the amount of $28,405.88. The Farrar lien in the amount of $940.56, along with the liens of John Deere and Evergreen, may not be avoided.

**END OF DOCUMENT**